**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KENNETH O. DIKE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-376 |
| | § | |
| VALLEY FORGE INSURANCE | § | |
| COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a suit to recover insurance proceeds and damages under the Texas Insurance Code and common law.  The insurer, Valley Forge Insurance Company ("Valley Forge") has moved to compel appraisal under an insurance policy issued to Kenneth Dike and The Kenneth O. Dike Group.  (Docket Entry No. 8).  Dike opposes the motion on the grounds that Valley Forge has not complied with the conditions precedent identified in the insurance policy for appraisal because it has not conducted a reasonable investigation of his claims.  Alternatively, Dike argues that Valley Forge waived its contractual right to seek appraisal.  Dike also argues that the appraisal clause is unconscionable and that this court should wait to order appraisal.  (Docket Entry Nos. 9, 18).[1]

Based on a careful consideration of the record and the applicable law, this court finds that this case involves a dispute over the cost of repairing damaged property that is subject to appraisal. This court also finds that Valley Forge did not waive its right to invoke appraisal or fail to comply

---

[1]   Valley Forge moved for appraisal before the Texas Supreme Court's decision in *In re Universal Underwriters of Tex. Ins. Co.*, --- S.W.3d ----, 2011 WL 1713278 (Tex. May 6, 2011).  This court ordered the insureds to supplement their response to Valley Forge's motion in light of this decision.  (Docket Entry No. 13).

with the conditions precedent to do so.  The motion to compel appraisal is granted.  The case is stayed pending the appraisal process.

The reasons for this ruling are set out below.

## I.      Background

Kenneth Dike is a CPA who conducts business from a property he owns and leases in Houston, Texas.  Valley Forge issued the insurance policy covering the property.  Hurricane Ike hit the Gulf Coast area in September 2008.  Dike claims that the hurricane damaged the property's roof and that water intrusion through the roof caused damage throughout the building, including structural damage.  Dike also claims that the hurricane damaged personal property inside the building, interrupted his accounting business, and caused him to lose three tenants.  (Docket Entry No. 10, First Amended Complaint, ¶ 13).

A few days after the hurricane, Dike notified Valley Forge of the property damage.  Valley Forge opened a file for Dike's claim, No. 2R811345, and Dike submitted claims.  Valley Forge sent William Bryant, an insurance adjuster, to Dike's property.  Bryant estimated that the property damages totaled $37,469.15, though Dike points out that this estimate did not include "materials, sales tax, and overhead & profit."  (Docket Entry No. 9, Ex. A-1); (Docket Entry No. 18, at 11).  On October 20, 2008, Valley Forge sent Dike a check for $35,000.00.  (Docket Entry No. 8, Ex. 2). Bryant inspected the property again on October 3, 2008 and revised the property-damage estimate to $51,048.18, though Dike again points out again that the estimate did not include sales tax, overhead, and profit.  (Docket Entry No. 9, Ex. A-2). Valley Forge sent Dike a check for $5,612.18 on October 29, 2008.  (Docket Entry No. 8, Ex. 2).

Valley Forge also hired Charlie Edwards from CME Claims Consulting ("CME") to adjust Dike's claim for loss of accounting business and rental income. CME in turn hired Buchanan Clarke Schladler LLP ("Buchanan") to evaluate these claims. Dike sent documents to Buchanan to show his business-interruption losses. Dike claims those losses exceeded $150,000.00. On August 21, 2009, Buchanan sent CME an estimate that Dike lost $3,293.95 in accounting income and $25,394.75 in rental income. (Docket Entry No. 18, Ex. E). Dike claims that Buchanan only estimated the losses for a 120-day period. Dike points out that his insurance policy covers damages "for 12 consecutive months," and that he sustained losses for more than four months. (Docket Entry No. 18, Ex. F). Valley Forge sent Dike a check for $29,780.24 on August 31, 2009.

Dike filed suit in state court on August 20, 2010. Dike asserts that before filing suit, he had discussions with Valley Forge but that there was "no remedy from [his] direct dealings . . . over the course of the investigation . . . ." (Docket Entry No. 18, at 13). Valley Forge was served on November 9, 2010. Valley Forge claims that it formally advised Dike's counsel on December 16, 2010 that it invoked its right to appraisal. Valley Forge removed to this court on January 27, 2011. On April 5, 2011, Valley Forge moved to compel appraisal. The policy's appraisal provision states:

> **2.      Appraisal**
>
> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any of the two will be binding as to the amount of loss. . . . If there is an appraisal, we will still retain our right to deny the claim.

(Docket Entry No. 8, at 3).

3

In his response to the motion to compel, Dike argues that Valley Forge cannot demand appraisal because it failed to conduct a reasonable investigation of his claims, which he asserts is a condition precedent to invoking appraisal.  Dike argues that the following language from the insurance policy obligates Valley Forge to conduct a reasonable investigation before seeking appraisal:

**(1)    Claims Handling**

(a)    Within 15 days after we receive written notice of the claim, we will:

(i)    Acknowledge receipt of the claim.  If we do not acknowledge receipt of the claim in writing we will keep a record of the date, method and content of the acknowledgment;

(ii)    Begin any investigation of the claim; and

(iii)    Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

(b)    We will notify you in writing as to whether:

(i)    The claim or part of the claim will be paid;

(ii)    The claim or part of the claim has been denied, and inform you of the reasons for denial;

(iii)    More information is necessary; or

(iv)    We need additional time to reach a decision.  If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in (b)(i) through (b)(iv) above within:

(i)    15 business days after we receive the signed, sworn proof of

4

loss and all information we requested; or

    (ii)    30 days after we receive the signed, sworn time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

(Docket Entry No. 18, Ex. F).  Dike also argues that Valley Forge's investigation was not reasonable because it did not comply with sections 542.056 and 541.060 of the Texas Insurance Code.  Section 542.056 states:

    (a)    Except as provided by Subsection (b) or (d), an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss.

    (b)    If an insurer has a reasonable basis to believe that a loss resulted from arson, the insurer shall notify the claimant in writing of the acceptance or rejection of the claim not later than the 30th day after the date the insurer receives all items, statements, and forms required by the insurer.

    (c)    If the insurer rejects the claim, the notice required by Subsection (a) or (b) must state the reasons for the rejection.

    (d)    If the insurer is unable to accept or reject the claim within the period specified by Subsection (a) or (b), the insurer, within that same period, shall notify the claimant of the reasons that the insurer needs additional time. The insurer shall accept or reject the claim not later than the 45th day after the date the insurer notifies a claimant under this subsection.

TEX. INS. CODE § 542.056.  Section 541.060 states:

    (a)    It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:

    . . . .

    (2)    failing to attempt in good faith to effectuate a prompt, fair,

5

and equitable settlement of:

(A)    a claim with respect to which the insurer's liability has become reasonably clear;

. . . .

(3)    failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

(4)    failing within a reasonable time to:

(A)    affirm or deny coverage of a claim to a policyholder; or

(B)    submit a reservation of rights to a policyholder;

. . . .

(7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim; . . . .

TEX. INS. CODE § 542.060(a)(2)–(4), (7).  Dike argues that Valley Forge failed to comply with these contractual and statutory duties by: "fail[ing] to provide Plaintiffs with a written explanation as to why it was only covering four months of Plaintiffs loss of business income, even though Plaintiffs policy provides for coverage of a 12-month period;" "unreasonably delay[ing] in settling Plaintiffs' loss of business income claim, although Plaintiffs had provided Defendant with all the information and documents requested to evaluate and settle the claim;" and "fail[ing] to include in its estimate of the damages to Plaintiffs' property amounts for materials' sales tax and overhead and profit, and therefore, in its estimate Plaintiffs' damages are grossly undervalued." (Docket Entry No. 18, at 18). Finally, Dike argues that Valley Forge's delay in paying his claim waived its right to appraisal because the delay prejudiced him.

**II.    Analysis**

6

Texas insurance policies frequently include provisions specifying appraisal to resolve disputes about the amount of loss under the policy. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888–89 (Tex. 2009). "An appraisal clause 'binds the parties to have the extent or amount of the loss determined in a particular way.'" *Id.* at 895 (quoting *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002)); *see also Lundstrom v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."). An appraiser must "decide the 'amount of loss,' not to construe the policy or decide whether the insurer should pay." *Johnson*, 290 S.W.3d at 890. "Unless the 'amount of loss' will never be needed . . . appraisals should generally go forward without preemptive intervention by the courts." *Id.* at 895.

## A.      Conditions Precedent

Assuming, but not deciding, that Valley Ford failed to comply with the "Claims Handling" provisions of the insurance policy and with provisions of the Texas Insurance Code, this does not prevent it from seeking appraisal because compliance with the "Claims Handling" provisions and the Texas Insurance Code are not a condition precedent to exercising appraisal rights. "In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010) (*quoting Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex.1990)). "In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." *Id.* (citing *Criswell*, 792 S.W.2d at 948). "While

7

there is no requirement that such phrases be utilized, their absence is probative of the parties intention that a promise be made, rather than a condition imposed." *Id.* (citing *Criswell*, 792 S.W.2d at 948). The appraisal clause does not use conditional language and Dike has not identified any provision in the contract showing that the parties intended that Valley Ford fully comply with the "Claims Handling" provisions and Texas Insurance Code before seeking appraisal. *See also Butler v. Prop. and Cas. Ins. Co.*, Civ. A. No. H-10-3613, 2011 WL 217495, at *1 (S.D. Tex. June 3, 2011) (finding that a similar insurance-policy appraisal provision does not require compliance with claims handling provision before seeking appraisal). Compliance with the "Claims Handling" provisions and the Texas Insurance Code is not a condition precedent to compelling appraisal.

### B.    Waiver

The contractual right to appraisal may be waived. *See, e.g.*, *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 561 (Tex. App. — Houston [14th Dist.] 2010, orig. proceeding). Waiver is defined as the "intentional relinquishment of a known right." *JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 748 (5th Cir. 2009) (per curiam) (summary calendar) (unpublished). Courts applying Texas law follow the standard articulated long ago in *Scottish Union & Nat. Ins. Co. v. Clancey*, 8 S.W. 630, 632 (Tex. 1888), to determine whether an insurer's acts amount to waiver: "To constitute waiver, the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss."[2] *See, e.g.*, *Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-CV-0228-G, 2010

---

[2]   Other cases quote similar language from *Scottish Union & Nat. Ins. Co. v. Clancey*, 18 S.W. 439, 441 (Tex. 1892): "[T]he acts relied on as constituting a waiver should be such as are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed

WL 1186323, at *4 (N.D. Tex. Mar. 26, 2010); *In re Sec. Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 WL 1609247, at *5 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (mem. op., not designated for publication); *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d at 563.

"[W]hile an unreasonable delay is a factor in finding waiver, reasonableness must be measured from the point of impasse." *In re Universal Underwriters of Tex. Ins. Co.*, --- S.W.3d ----, 2011 WL 1713278, at *3 (Tex. May 6, 2011). Determining whether the parties have reached an impasse "requires an examination of the circumstances and the parties' conduct, not merely a measure of the amount of time involved in seeking appraisal." *Id.* "An impasse is not the same as a disagreement about the amount of loss. Ongoing negotiations . . . do not trigger a party's obligation to demand appraisal. Nor does an insurer's offer of money to cover damages necessarily indicate a refusal to negotiate further . . . ." *Id.* "[M]ere delay is not enough to find waiver; a party must show that it has been prejudiced." *Id.* at *5. "Prejudice to a party may arise in any number of ways that demonstrate harm to a party's legal rights or financial position." *Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *5. The Texas Supreme Court has observed that "it is difficult to see how prejudice could ever be shown when the policy . . . gives both sides the same opportunity to demand appraisal. If a party senses that an impasse has been reached, it can avoid prejudice by demanding an appraisal itself." *Id.* at *7.

Waiver is an affirmative defense, and the party alleging waiver has the burden of proof. *JM Walker LLC*, 356 F. App'x at 748; *Sanchez*, 2010 WL 413687, at *4. Whether certain circumstances constitute waiver is a question of law. *JM Walker LLC*, 356 F. App'x at 748; *see also Sanchez*, 2010 WL 413687, at *4 (holding that although waiver is typically a fact question, when the relevant facts

---

by him." *See, e.g., JM Walker LLC*, 356 F. App'x at 748; *Sanchez v. Prop. & Cas., Ins. Co. of Hartford*, No. H-09-1736, 2010 WL 413687, at *4 (S.D. Tex. Jan. 27, 2010).

are undisputed and clearly established, a court may decide whether a party has waived its contractual right to appraisal as a question of law). "The trial court may determine whether an appraisal has been waived as a matter of law at the preliminary stages of litigation." *Sanchez*, 2010 WL 413687, at *4 (quoting *Laas v. State Farm Mut. Auto. Ins. Co.*, No. 14-98-00488-CV, 2000 WL 1125287 at *6 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (unpublished)).

The parties have reached an impasse. Dike filed suit against Valley Forge and admits that he has found "no remedy from . . . direct dealings . . . over the course of the investigation . . . ." (Docket Entry No. 18, at 13). Dike argues that Valley Forge delayed seeking appraisal. The parties dispute the delay's length. Valley Forge argues that it began seeking appraisal shortly after Dike filed suit in state court on August 20, 2010, when it advised Dike that it would seek appraisal on December 16, 2010. Dike argues that Valley Forge did not formally begin seeking appraisal until April 5, 2011, when it moved to compel an appraisal. Regardless of the length of delay, however, Dike has not demonstrated either waiver or that prejudice. *See Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *5 ("[M]ere delay is not enough to find waiver; a party must show that it has been prejudiced.").

The Texas Supreme Court has explained that:

> [to] constitute waiver the acts relied on must be such as are reasonably calculated to induce the assured to believe that compliance by him with the terms of the policy . . . is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability or refusal to pay the loss.

*Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *2 (quoting *Scottish Union*, 8 S.W. at 632). "Or," as the court "more recently concluded, '[w]aiver requires intent, either the intentional relinquishment of known right or intentional conduct inconsistent with claiming that right.'" *Id.* (quoting *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006). The court has also

10

explained that prejudice can rarely be found on facts similar to those present here. *Id*. at *5; *see also Perry Homes v. Cull*, 258 S.W.3d 580, 597 (Tex. 2008) (defining prejudice for purposes of waiver of arbitration as "the inherent unfairness in terms of delay, expense, or damage to a party's legal position" (quoted in *Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *5 )); *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 47 n.5 (1st Cir. 2005) ("[A] party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party." (quoted in *Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *5); *Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995) (finding prejudice where party "incurred expenses as a direct result of [opponent's] dilatory behavior" (cited and quoted in *Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *5 )). Dike has not shown prejudice.[3]

Finally, Dike argues that this court should allow him to conduct limited discovery on waiver. Additional discovery is unnecessary because the evidence Dike needs to support his waiver claim should already be in his control. Additional discovery is unnecessary.

### C.    Unconscionability

Dike argues that even if the insurance policy allows appraisal, this court should not enforce the clause because it is unconscionable. Dike argues that appraisal forces him "to give up his day in court;" allows Valley Forge "to contractually limit their insurance code liability;" and unfairly

---

[3]  Dike next argues that Dike's delay prejudiced it because "any appraisal award at this juncture would be outside of the policy deadline for making a claim for replacement cost." (Docket Entry No. 18, at 22). Dike points to a provision in his insurance policy stating that an insured who elects, as Dike did, to make a claim on an actual-cash-value basis has 180 days to change the claim to a replacement-cost basis. He argues that Valley Forge's motion to compel appraisal prevents him from exercising this right. Dike has identified no provision in the insurance policy stating that an appraisal prevents him from making his claim on a replacement-cost basis, or that he cannot ask for a replacement-cost basis at appraisal. This is not prejudice.

requires him to pay for a share of the appraisal costs.  (Docket Entry No. 9, at 18–19).

"Unconscionability can be premised on either of two types of conduct: (1) taking advantage of the

lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or (2) an

act or practice resulting in a gross disparity between the value received and consideration paid in

a transaction involving transfer of consideration."  *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d

998, 1005 (5th Cir. 1997) (citing TEX. BUS. & COM. CODE § 17.45(5)).  Dike has not identified any

court that has found an appraisal clause similar to the clause in his insurance policy unconscionable.

Since 1888, the Texas Supreme Court has recognized that appraisal clauses are valid "[i]n the

absence of fraud, accident or mistake."  *Johnson*, 290 S.W.3d at 888 (quoting *Scottish Union*, 8 S.W.

at 631); *see also In re Allstate Cnty. Mut. Ins.* Co., 85 S.W.3d 193, 196 (Tex. 2002) ("Texas courts

have distinguished between appraisal and arbitration for over a hundred years.  And they have

enforced appraisal provisions over that same length of time."); *Universal Underwriters*, --- S.W.3d

----, 2011 WL 1713278, at *2 ("[Appraisal] clauses are generally enforceable, absent illegality or

waiver.").  Dike does not argue fraud, accident, or mistake.  The Texas Supreme Court has rejected

the argument that appraisal clauses unfairly burden an insured.  "Appraisals can provide a less

expensive, more efficient alternative to litigation, and we [have] held that they 'should generally go

forward without preemptive intervention by the courts."  *Universal Underwriters*, --- S.W.3d ----,

2011 WL 1713278, at *2 (quoting *Johnson*, 290 S.W.3d at 895).  The appraisal clause is not

unconscionable.[4]

### D.    Whether to Stay the Litigation Pending Appraisal

Dike argues that this court should allow it additional discovery pending appraisal on its

---

[4] Dike also argues that the appraisal clause is unconscionable because it conflicts with Texas Insurance Code provisions allowing for attorneys' fees.

12

claims that Valley Forge violated the Texas Insurance Code. "While [a] trial court has no discretion to deny the appraisal, the court does have some discretion as to the timing of the appraisal." *In re Allstate*, 85 S.W.3d at 967. Courts have held that when a dispute involves both coverage and valuation disputes, a court should stay the valuation portion of the case and proceed with the coverage portion. *See Glenbrook Patiohome Owners Ass'n v. Lexington Ins. Co.*, 2011 WL 666517, at *10 (S.D. Tex. Feb. 14, 2011) ("In this case, however, the record makes clear that there are issues of both coverage and of loss valuation. Under such circumstances, the part of the litigation that involves loss valuation is appropriately stayed. The part of the litigation that involves coverage issues, however, should continue pending the appraisal."). But in many cases, the litigation is stayed while appraisal is completed. *See, e.g.*, *Molzan, Inc. v. United Fire & Cas. Co.*, Civ. A. No. H-09-01045, 2009 WL 2215092, at *5 (S.D. Tex. July 23, 2009); *cf. Johnson*, 290 S.W.3d at 895 ("Unless the 'amount of loss' will never be needed . . . appraisals should generally go forward without preemptive intervention by the courts."); *Universal Underwriters*, --- S.W.3d ----, 2011 WL 1713278, at *2 ("Appraisals can provide a less expensive, more efficient alternative to litigation . . . ."). Dike does not argue that the case involves coverage disputes. The valuation disputes that are the focus of this lawsuit are best resolved through appraisal. The case is stayed pending appraisal.

## III.    Conclusion

Valley Forge's motion to compel appraisal is granted. The case is stayed pending appraisal. The parties must notify this court when the appraisal is concluded and the result within 14 days after the appraiser issues the report.

SIGNED on June 23, 2011, at Houston, Texas.

_____
Lee H. Rosenthal

13

Lee H. Rosenthal
United States District Judge